No. 13,828.

Lueras et al. *v.* Town of Lafayette et al.
(65 P. [2d] 1431)

Decided March 8, 1937.

Mr. C. A. Prentice, Mr. Joseph G. Prentice, for plaintiffs in error.

No appearance for defendants in error.

*In Department.*

Mr. Justice Hilliard delivered the opinion of the court.

A proceeding under the declaratory judgments act.
Plaintiffs in error, petitioners below, alleging that they are of Spanish descent, citizens of the United States and residents of the town of Lafayette, charged that the town

and its mayor, trustees, and some lesser town officials, the fire department of the town, its chief and other of its members, all made parties defendant, had conspired together to deny, and had denied, petitioners "their right to the use" of a certain public swimming pool of the said town of Lafayette, contrary to provisions of the Fourteenth Amendment to the Constitution of the United States and the bill of rights of the Constitution of Colorado, and in violation of the civil rights statutes of Colorado, C. L. 1921, chapter 72. The prayer was that the court declare the status of the said pool and of the town in relation thereto, the status of petitioners in relation to their claimed rights to use the pool, and to adjudge that denial of said rights in the premises was in contravention of the constitutional and statutory provisions above mentioned. Issues were formed and trial followed resulting in a denial of the petition.

It appears that there is a swimming pool in Lafayette, constructed to an incompleted point by the joint efforts of the town and a governmental activity; that the so-called fire department of the town is voluntary, and that neither it as such nor any of its members is under the control of the town officials; that at a stage when the pool to be available for use required additional expenditure of funds, the town had no money for that purpose; that thereupon for the period involved here, and longer, the town leased the pool to the "fire department," in consideration of which the lessee agreed "to purchase and install at its own expense all equipment necessary for the operation of said swimming pool, and * * * operate said swimming pool at its own expense"; that by the expenditure of a considerable sum, much of which the membership of the volunteer fire department solicited and received through contributions from private sources, the pool was equipped and made ready for use; that when completed a "swimming pool" committee of the "fire department" caused a sign to be placed on the outer wall of the pool, reading: "Firemen's Pool. We reserve the

right to reject any or all persons without cause. White trade only. Lafayette Fire Department.''

There was testimony that some of the petitioners had been told they could not use the pool; but as to all of them the court found that, either the time fixed antedated the opening of the pool or that the expression of denial to them did not come from any of the defendants or the representatives of any of them.

The court absolved all defendants from the charge that the lease of the pool was made in furtherance of a scheme and conspiracy to prevent its use by petitioners. It further found that none of the petitioners based any complaint of discrimination upon the sign herein quoted, which seemingly, in its offensive sense, was without application to petitioners. 68 C. J. pp. 257, 258.

Our study of the record leads us to the conclusion reached by the trial court. The showing on the part of petitioners was indefinite and uncertain. We further conclude with the trial court that if any declaration in relation to the status of the defendant town were to be made it would have to be ''that the town is not responsible.'' In that connection we commend the court's declination to make such finding because of its possible prejudice to petitioners should they conclude to proceed against the town under the civil rights statutes or otherwise, as advised. In short the court, confronted with a record that did not warrant granting relief to petitioners in the present inquiry, considerately refrained from declaring that which might handicap them in an action of definite objective, should they elect to so proceed.

On the whole record we think, as did the learned trial judge, that generally, the declarations sought by petitioners are of things obviously obtaining. To declare ''that a statute is a statute,'' said the court, ''or that a Spanish-American is a Spanish-American,'' tends to solve no problem involved here. The Fourteenth Amendment to the Constitution of the United States, our bill of

rights and civil rights statutes are of broad and general application. If petitioners come within the purview of the Constitution and laws referred to, or others, the status resulting from proof thereof would qualify them to invoke and enjoy every remedy and right the law provides—directly to be sought and simply to be adjudged. We think the trial court rightly resolved.

Considering the spirit of our institutions, and the rather definite constitutional and statutory provisions in Colorado applicable to the situation here presented, we are disposed to emphasize the thoughtful suggestion of the trial judge that race and color should not be made the basis of discrimination. It tends to induce ill feeling —always potentially detrimental to the well-being of society.

Let the judgment be affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE BAKKE concur.